IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JESSE RAY MASTERS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-160-GLJ |
| | ) |
| **FRANK BISIGNANO,**[1] | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| Defendant. | ) |

# ORDER

Claimant Jesse Ray Masters requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. In accordance with Fed. R. Civ. P. 25(d), Mr. Bisignano is substituted for Michael O'Malley as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was born on February 1, 1957, and was 58 years old on the date last insured. (Tr. 1039). He was 54 years old in December 2015, when he claimed he became disabled due to neuropathy. (Tr. 215, 219). He was 67 years old at the time of the most recent administrative hearing. (Tr. 1040). Claimant completed high school and has past relevant work experience as a correction officer. (Tr. 1038). Claimant asserts he has been unable to work since December 30, 2015, alleging disability due to issues with peripheral neuropathy, hearing loss, cervical spine degenerative disc disease, and obesity. (Tr. 1027).

## Procedural History

Claimant filed a claim for disability insurance disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on July 19, 2017. (Tr. 15, 182). His application was denied. ALJ Michael Mannes then conducted an administrative hearing and determined Claimant was not disabled in a written decision dated October 26, 2018. (Tr. 15-20). After denial of review by the Appeals Council, (Tr. 1-5), this Court found in Case No. CIV-19-124-SPS that the ALJ's step 2 findings were not based on substantial evidence and reversed the decision with instructions to properly evaluate Claimant's impairments. (Tr. 672-679). On remand, the claim was denied again by ALJ Mannes on June 3, 2021. (Tr. 596-605). On appeal in Case No. CIV-21-293-KEW, this Court again reversed and remanded the case with instructions for the ALJ to reassess

Claimant's RFC after discussing all the probative evidence pertaining to his impairments. (Tr. 1086-1095).

ALJ James Bentley conducted another hearing on February 1, 2024, and again determined Claimant was not disabled in a written decision dated February 14, 2024. (Tr. 1024-40; 1048-1065). Claimant's "date last insured" ("DLI") was December 31, 2015, meaning that he must demonstrate that he is "disabled" on or before that date to receive benefits. (Tr. 1027). As of his alleged disability onset (and prior to his DLI), he was of "advanced age" (age 55-59).

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. At step two, the ALJ found that Claimant had the severe impairments of peripheral neuropathy, hearing loss, cervical spine degenerative disc disease, and obesity, as well as the nonsevere impairments of a mental impairment, hypertension, hyperlipidemia, status post Lyme disease, right third finger degenerative joint disease, melanoma, and alcohol use disorder. (Tr. 1027-1028). Next, he found that Claimant's impairments did not meet a listing. (Tr. 30). At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform medium work with the following limitations:

> occasional foot controls; occasional climbing of ramps/stairs; no climbing of ladders/scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; frequent bilateral handling and fingering; avoid unprotected heights and dangerous moving machinery; and avoid frequent exposure to extreme cold, loud noise, and vibration.

(Tr. 1030). The ALJ thus concluded medium work with these limitations allowed Claimant to perform his past job as a corrections officer and denied the claim on this basis; alternatively, he found at step 5 that there are other jobs that can be performed within the restrictions of the RFC, *i.e.*, the medium jobs of laundry worker, industrial sweeper-cleaner, and linen-room attendant. (Tr. 1038-40). The decision is ripe for review under 42 U.S.C. § 405(g).

## Review

Claimant contends the ALJ erred when formulating his RFC for medium work.[3] Specifically, Claimant asserts the ALJ failed to appropriately evaluate the opinion evidence and consider Claimant's statements when finding that an advanced age claimant with peripheral neuropathy can lift and carry 50 pounds and stand and walk most of the day. (Docket No. 9, p. 3). The Court agrees, and the decision of the ALJ must therefore be reversed.

The relevant evidence reflects that, beginning in 2002, Claimant had complaints of numbness in his feet. (*See* Exhibit 1F/27). On September 18, 2006, he stated that his feet had been numb for years and endorsed history of Lyme's disease in 1997. (*See* Exhibit 1F/5). On September 18, 2006, left wrist x-rays revealed monoarticular osteoarthritis, in the form of minimal osteoarthritis involving the first carpometacarpal joint, and a tiny ossicle note at the radial side of the distal margin of the navicular. (Exhibit 1F/76). On June

---

[3] Medium work is defined in § 404.1567(c) and SSR 83-10. It demands the ability to stand/walk approximately 6 hours in 8 while lifting up to 50 pounds occasionally and 25 pounds frequently.

18, 2007, x-rays were taken of Claimant's third finger on his right hand because he was unable to fully extend his right third finger. (*See* Exhibit 1F/75).

On December 12, 2014, it was noted that Claimant "seem[ed] to have significant paresthesia affecting both lower extremities and sensitive also to colder temperatures." He was also noted to have "significant trauma to his low back" and "past history suggestive of cervical spine disorder." (*See* Exhibit 6F/15). On December 17, 2015, Claimant's cardiologist noted that Claimant "seemed to have [a] rather tough, interesting neurological issue with tingling and numbness of the toes and fingertips to the extent that he is not able to feel the brakes of his vehicle and needs urgent neurological consultation." Claimant added that he "had lost his job because of this neurological illness." He was also noted to have a low back problem, ringing in the left ear with periods of scary buzzing in the left ear, and to have a body mass index of 41, weighing 321 pounds. The cardiologist again deferred neurology referral to primary care but asked Claimant to inform him about the progress regarding "his disturbing neurological problems." (*See* Exhibit 6F/11). On the February 3, 2016, cardiology follow-up, Claimant endorsed tingling in the toe and fingers, plus occasional tenderness, on review of systems. (Exhibit 6F/9). On August 23, 2016, Claimant described numbness, which began at the bilateral toes, now progressed to the mid-tibial area, and noted he recently developed numbness of the left fingertips. On September 20, 2016, he stated that his finger and toe numbness and stinging seemed more intense since the last visit.

On March 8, 2017, VA treatment notes indicated that Claimant reported a long history of numbness in his feet. (*See* Exhibit 2F/31-32). He was assessed with peripheral

neuropathy. (Exhibit 2F/34). His feet were cold, and he had heavy scaling on his feet. However, his cranial nerves were grossly intact. His strength was 5/5 bilaterally proximally and distally. His deep tendon reflexes were 2+ proximally and distally, symmetric and equal bilaterally. His tandem gait was appropriate. He had normal sensations proximally, though monofilament was 1/5 on the right. (Exhibit 2F/33).

On the March 21, 2017, VA examination, ankle/brachial indices revealed no indication of obstruction to arterial flow of either lower extremity. (Exhibit 2F/8-9). On April 12, 2017, Claimant reported that his peripheral neuropathy was not getting any better and stated that he still could not feel and still had significant nerve pain, despite stating that a urea cream removed most of the scaling seen on examination the prior month. (*See* Exhibit 2F/25). On examination, Claimant had "significant sensory neuropathy" with 1/5 on the right foot only and 0/5 on the left. (Exhibit 2F/26). This was the first occasion Claimant was prescribed Gabapentin for nerve pain. (*See* Exhibit 2F/26).

December 18, 2012, x-rays of the cervical spine and left shoulder revealed spondylosis and mild foraminal narrowing on the right at C4-5. (*See* Exhibit 1F/44). September 18, 2006, right wrist x-rays revealed a smoothly marginated osseous fragment involving the distal tip of the radial styloid, mild osteoarthritic changes involving the first carpometacarpal joint, early degenerative changes of the scaphoid trapezium articulation, and a small cortical cyst involving the ulnar margin of the triquetrum. (Exhibit 1F/77). That same day, Claimant exhibited some muscle aches during extreme rotations of the cervical spine, and left shoulder tenderness against minimal resistance and flexion and abduction greater than 90 degrees. (*See* Exhibit 1F/42).

On October 20, 2017, Dr. Larry Lewis, M.D. examined Claimant and opined that he would be absent three or more days per month from work due to his peripheral neuropathy and would need a wheelchair. Dr. Lewis assessed Claimant with peripheral neuropathy with a poor prognosis. As to Claimant's pain, Dr. Lewis indicated that its presence would be irretractably and virtually incapacitating and that Claimant would be totally restricted and unable to function at a productive level of work. He further indicated that although Claimant could handle simple instructions and make simple work-related decisions, he could not maintain concentration and attention for extended periods in a routine work setting and could not handle normal work stress. He checked boxes indicating that Claimant could not stand/walk up to two hours in an eight-hour workday, sit for six hours in an eight-hour workday, or use his hands for fine manipulation. Dr. Lewis opined that Claimant's impairments had existed for 15 years at this level. (Exhibit 5F).

On a September 17, 2018, primary care visit, Claimant complained of increasing numbness from his bilateral lower extremities up his legs, (Exhibit 8F/108), and numbness to the fingers of his bilateral hands. (Exhibit 8F/108-109). By September 26, 2018, he was noted to be prescribed Pregabalin 75 mg twice a day, (*see* Exhibit 8F/100), as he had an insufficient response to Gabapentin. (*See* Exhibit 8F/113).

On October 3, 2018, Claimant underwent a neurological consultation with Dr. John L. Kareus, D.O. He reported that, following treatment for a tick bite, he developed significant joint pain, which seemed to develop into numbness on the lateral aspect of his foot that gradually worsened over the previous 21 years. He added that it now involved his fingertips to a degree, and that he had numbness bilaterally from his feet up to just below

the knees, which had led to some balance difficulties. He further added that he tends to fall because he does not do well with his legs. (*See* Exhibit 7F/3). Dr. Kareus indicated that the peripheral neuropathy was likely idiopathic as it had been ongoing for over 20 years so there is little to do as far as intervention goes. (Tr. 877). On October 3, 2019, Claimant stated that, in addition to the stinging sensation in his feet with considerable numbness, he was beginning to have more stinging in his fingertips associated with neuropathy. Dr. Kareus prescribed Cymbalta 60 mg at bedtime and stated that the dose could be increased if it provided benefit. He ordered a six-month follow-up. (Exhibit 7F/18).

By May 2020, Claimant reported that Cymbalta gave him no benefit. He added that he only took Pregabalin when his pain was really bad, because it made him "feel off." Dr. Kareus recorded that Claimant had nothing focal on neurological examination. He recorded that Claimant walked with a waddle with an antalgic-like gait, but there was no weakness. Dr. Kareus prescribed Oxcarbazepine 150 mg twice a day. (*See* Exhibit 7F/17). Dr. Kareus noted that although Claimant would like to have the numbness get better, "I think [it] is ou[t] of our control." *Id*.

At the administrative hearing held on February 1, 2024, Claimant testified that he was experiencing arthritis in his hands and neck back in 2007, all the way through 2015. Numbness in his hands and fingertips has progressively gotten worse over the years. In 2015, he could not feel anything and could not hold anything. He last worked security for an Army ammunition plant in 2011. He was laid off due to the numbness in his feet, from both neuropathy and a right heel bone spur. He needed to elevate his feet to help with the burning. Neuropathy in his hands and feet was the main reason he could not go back to

work in 2015. He also had difficulty hearing in 2015. He testified he had difficulty doing housework, cooking, and cleaning. He could get around the kitchen, but could not stand longer than 30 minutes, otherwise the bottoms of his feet would start burning. He could not walk well and could not run. Doctors have no explanation as to the cause of his neuropathy. (Tr. 1048-1065).

Claimant contends the ALJ never properly assessed the opinion of Dr. Lewis, or Claimant's self-described limitations. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the

other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). As noted *supra*, in October 2017, Dr. Lewis assessed limitations including the following: sit and stand/walk for less than 2 hours each during an 8-hour workday; rarely lift/carry 10 pounds and never lift/carry 20 pounds; and needs unscheduled breaks during the workday. (Tr. 568, 572). Dr. Lewis also opined that Claimant would likely be absent from work three or more days per month because of his impairments and/or treatment. (Tr. 566, 573). In support of his opinion, Dr. Lewis cited his diagnosis of peripheral neuropathy and listed his prognosis, symptoms, findings/objective signs, and treatment/response. (Tr. 570). Dr. Lewis stated that his description of symptoms and limitations had been present at this level for 15 years. (Tr. 574). Considering this evidence, the ALJ found the opinion of Dr. Lewis unpersuasive. (Tr. 1036). The ALJ stated that this opinion "is arguably supported" but nevertheless found that it is inconsistent with the record. *Id*. The ALJ asserted that Dr. Lewis' opinion that his limitations had been present for approximately 15 years was inconsistent with him working

through December 2010. (Tr. 1036). However, the record confirms neuropathy symptoms dating back to at least 2002. Moreover, in 2016, Paul Chin, M.D. noted that Claimant had experienced a slow progression of his neuropathy, but that it had been present greater than 10 years. (Tr. 410-11). In 2018, Dr. Kareus noted that Claimant's neuropathy originated over 20 years ago during his military service. (Tr. 874; 877). Thus, Dr. Lewis' opinion is consistent with the statements of Drs. Chin and Kareus who both opined on the progressive nature of his condition.

Additionally, the ALJ asserted that Dr. Lewis' opinion was inconsistent with normal examination findings. (Tr. 1036). While Claimant acknowledges that some examinations revealed normal findings, other examinations confirmed that his feet were cold with heavy scale; 1/5 monofilament on the right; significant sensory neuropathy with 1/5 on the right foot and 0/5 on the left foot; absent deep tendon reflexes at the ankles; mute bilateral plantar stimulation; broadened based/antalgic gait; loss of pinprick sensation from just below the knee down; markedly reduced bilateral joint position sense; absent vibration sense in both feet; diminished knee reflexes; and a waddling, antalgic-like gait. (Tr. 486, 493, 876-77, 888). The ALJ failed to explain how these abnormal examination findings were not consistent with Dr. Lewis' opinion or were outweighed by the normal examination results.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the]

work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013).

The record demonstrates Claimant has suffered from neuropathy for years and he reported numbness in his legs and feet beginning in 2002 and continuing over the years. (Tr. 367, 389, 391). For example, on December 14, 2014, Claimant reported significant paresthesia affecting both lower extremities as well as sensitivity to colder temperatures. (Tr. 590). On December 17, 2015, Claimant described numbness and tingling in his toes and fingertips to the extent that he was unable to feel the brakes of his vehicle. (Tr. 586). In February 2016 he reported ongoing numbness in his toes and fingers. (Tr. 583). In August 2016 he reported numbness of his distal limbs that had progressed to the mid-tibial area. (Tr. 408). Claimant again described numbness in his fingertips and stated that he is unable to feel fire burning his skin. (Tr. 408). In September 2016 he reported finger and toe numbness/stinging that seemed more intense. (Tr. 410). His provider noted that there had been a slow progression of his neuropathy, but that it had been present greater than 10 years. *Id*. In March 2017 he reported that his legs are turning dark/have no feeling and that his fingertips tingle. (Tr. 491). He stated that this has been going on for years. *Id*. He also reported ongoing numbness in his feet. (Tr. 492). Examination revealed that his feet were cold with heavy scale and monofilament was 1/5 on the right. (Tr. 493). The scale was removed from his feet. (Tr. 494). In April 2017 he reported that his legs are still dark. (Tr. 485). Records noted that despite removal of most of the scale from his feet, he still could not feel them and still has significant nerve pain. *Id*. Examination in April 2017 confirmed significant sensory neuropathy with 1/5 on the right foot and 0/5 on the left foot. (Tr. 486).

When a medical source assesses functions that limit a claimant's work activity, the ALJ must explain why that functional limitation does not appear in the RFC. *Frantz v. Astrue*, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); *Givens v. Astrue*, 251 Fed. Appx. 561, 568 (10th Cir. 2007); *SSR* 96-8p (an RFC assessment should include all the evidence and ordinarily is the maximum remaining ability to do sustained work activities in an ordinary work setting). The ALJ failed to connect Claimant's severe impairment of neuropathy that was sustained and ongoing, with his ability to perform the lifting/carrying requirements of medium work. Because the ALJ's assigned RFC fails to comply with *SSR* 96-8p, there is no assurance Claimant can perform the jobs assigned. Here, the ALJ does not support the limitations found in his RFC with the required evidence. "When the ALJ has failed to comply with *SSR* 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's determination." *Jagodzinsky v. Colvin,* 2013 WL 489101 *2 (D. Kan. Sept. 11, 2013) (unpublished), *citing Brown v. Comm'r of the Soc. Sec. Admin.* 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003).

Because the Court is reversing on the claimant's arguments discussed above, "[w]e will not reach the remaining issues, *i.e.*, Claimant's subjective complaints, raised by appellant because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). The decision of the Commissioner must accordingly be reversed, and the case remanded to the ALJ for further analysis of *all* the evidence related to Claimant's impairments, as well as a thorough evaluation of the evidence in the record as well as Claimant's subjective statements in

relation to these impairments. If such analysis on remand results in any adjustment to Claimant's RFC, the ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.  In light of the number of remands that have already occurred in this case, as well as the length of time this case has been pending, the Court "declines to remand with an award instruction on this occasion but reserves the right to do so in any future appeal should the Commissioner fail in the execution of h[is] obligation under the law as blatantly as was done in this latest decision." *Wilkerson v. Colvin*, 2014 WL 1217768, at *4 (E.D. Okla. Feb. 28, 2014). *But see Wilkerson v. Colvin*, 2016 WL 4530625, at *2 ("Here, the Social Security Administration has been given numerous opportunities to properly evaluate the same issue . . . This has taken ten years. . . . Under these circumstances, the undersigned Magistrate Judge finds that additional fact finding would only serve the purpose of delay of the receipt of benefits, and that a ten-year delay involving three appeals to this Court was sufficient time to allow the Social Security Administration to properly adjudicate the Plaintiff's disability application."), *affirmed and adopted by Wilkerson v. Colvin*, 2016 WL 4532119 (E. D. Okla. Aug. 29, 2016) (slip op.).

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the Court finds the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**IT IS SO ORDERD** this 12 day of August, 2025.

_____
**GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE**